UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

H. WAYNE WHITE, H. WAYNE WHITE
AND ASSOCIATES, INC., and NATIONAL
HEALTH PLANS PLUS, INC.,

        Plaintiffs,

-vs-                               Case No.  5:07-cv-62-Oc-10GRJ

CONTINENTAL CASUALTY COMPANY,

        Defendant.

_____/

## O R D E R

The Plaintiffs, health insurance brokers licensed to do business in Florida, have sued the Defendant, an insurance company, for breach of a professional liability and indemnity insurance policy.  The Defendant has filed three counterclaims seeking a declaratory judgment that the Plaintiffs are not covered under the terms of the policy.  The case is now before the Court for consideration of the Defendant's Motion for Summary Judgment, (Doc. 25), to which the Plaintiffs have filed a response in opposition.  (Doc. 30).   Upon due consideration, the Court finds that the policy does not provide coverage to the Plaintiffs and, therefore, that the Defendant's Motion is due to be granted in its entirety .

## Factual Background

I.    The Policy

Defendant Continental Casualty Company ("Continental") issued a Company Sponsored Life Insurance Agent And Securities Broker/Dealer Professional Liability Policy,

Number 267868196, (the "Policy"), to American Heritage Life Insurance Company,

("American Heritage").  The Policy had an effective period from May 1, 2003 to May 1,

2004, and provided both a defense to and indemnification from "any claim (as defined in

the Policy) first made against an insured and reported to the insurer during the policy

period. . . ."[1]  Claims are defined as:

    a.    a written demand for monetary damages, or

    b.    a civil adjudicatory or arbitration proceeding for monetary damages, against an **Insured** for a **Wrongful Act**, including any appeal therefrom.  Claim does not include a demand or proceeding for non-monetary or injunctive relief or any criminal proceeding.[2]

The "Insurance Agreement" portion of the Policy provides that

The Insurer shall pay on behalf of the Insured all Loss which the Insured shall become legally obligated to pay resulting from a Claim made and reported during the Policy Period or the Extended Reporting Period, if applicable, for a Wrongful Act taking place on or after the Prior Acts Date by the Insured, or by any one for whose acts the Insured is legally responsible, solely in rendering or failing to render   Professional Services as an Agent or General Agent of a Policyholder.[3]

The Policy defines an "Insured" as an "Agent or General Agent," and defines "Agent

and General Agent" as:

    a.    an individual who maintains an agent contract with the Policyholder an who has elected to enroll for coverage under this Policy and whose enrollment is on file with the Policyholder; and

---

[1]Doc. 25-4, page 2.

[2]Doc. 25-4, page 4.

[3]Doc. 25-4, page 15.

2

   b.    any corporation, partnership, or other business entity which is owned
         and controlled by such Agent or General Agent, but solely with respect
         to the liability of such organization as it arises out of the Agent or
         General Agent rendering or failing to render Professional Services.[4]

The Policy contains twenty-one (21) exclusions, two of which are relevant to this

case.  Exclusion 14 states that the Policy does not apply to any

   Claim based upon, directly or indirectly, arising out of, or in any way involving
   the insolvency, receivership, conservatorship, liquidation, bankruptcy or
   inability to pay of a benefit plan, insurance company, managed health care
   organization, reinsurer, risk retention group or captive (or any self-insurance
   plan or trust by whatsoever name), or limited partnership in which the insured
   has placed business or obtained insurance coverage, or placed and/or
   recommended placement of the funds of a client.[5]

Exclusion 19 states that the Policy does not apply to any

   Claim based upon, directly or indirectly, arising out of, or in any way involving
   the actual or alleged sale, attempted sale or servicing of any coverage,
   alleged coverage or plan placed with any form of Multiple Employer Welfare
   Arrangement as defined by the Employee Retirement Income Security Act of
   1974, as amended,[6] or any employee benefits plan involving self funding in
   whole or in part, by any employer.[7]

II.    The Plaintiffs

_____

[4]Doc. 25-4, page 15.

[5]Doc. 25-4, page 13.

[6]A Multiple Employer Welfare Arrangement, ("MEWA") is "an employee welfare benefit plan,
or any other arrangement (other than an employee welfare benefit plan), which is established or
maintained for the purpose of offering or providing any benefit . . . to the employees of two or more
employers (including one or more self-employed individuals), or to their beneficiaries, . . . ." 29
U.S.C. § 1002(40)(A).

[7]Doc. 25-4, page 14.

3

Plaintiffs H. Wayne White and H. Wayne White and Associates both had agent contracts with American Heritage during all relevant time periods, and were enrolled for coverage under the Policy.  At all relevant times, White was employed either as an independent contractor or as Vice President of Plaintiff National Health Plans Plus, Inc. ("National Health").  White never owned or controlled National Health, and it is now undisputed that National Health was not covered by the Policy at any point in time.

III.    The Underlying Claims

On October 25, 2002, an action was filed in the Circuit Court of Benton County, Arkansas styled Carolyn Juhnke, Plaintiff vs. Dale Strickland, TRG Marketing LLC, The Nationwide Companies, Inc., and National Health Plans Plus, Inc., and TDI Managed Care Services, Inc. d/b/a Eckerd Health Services, Defendants, Case No. cv-02-001396-4, (the "Juhnke Claim").  The complaint alleged that National Health, through Strickland, marketed and sold Juhnke health care coverage under the TRG Plan, and that the TRG Plan was marketed and sold as an ERISA qualified plan, even though it was not such a qualified plan.  Rather, the complaint alleged that the TRG Plan was, in fact, operating as a MEWA, and that Juhnke's $24,000 in medical expenses were not paid because "TRG was not financially solvent."[8]

On October 24, 2003, a lawsuit was filed in the Circuit Court of Arkansas styled Lloyd Dean Brown and Connie Brown, Plaintiffs vs. Helen Markovich, Team National, Inc.,

---

[8]Doc. 25-7, p. 6, ¶ 19.

4

National Health Plans Plus, Inc., Jerry Wayne Morgan, Kenny Joe Harris, Carmelo Zanfei, individually and d/b/a TRG Marketing, LLC, and William Pal Crouse, Jr., individually and d/b/a TRG Marketing LLC, Defendants, Case No. CV-2003-0099, (the "Brown Claim").  The complaint in the Brown Claim similarly alleged that the TRG Plan "was not a qualified ERISA plan, but rather a Multiple Employer Welfare Arrangement," and that TRG was insolvent and did not have adequate cash reserves to cover potential claims.[9]  The plaintiffs alleged that they had incurred $80,000 of unpaid medical expenses.

On December 19, 2003, a First Supplemental Petition was filed in the District Court of Travis County, Texas in the action entitled Robert Loiseau, Special Deputy Receiver, of American Benefit Plans, et al., Plaintiff vs. Robert David Neal, et al., Defendants, Case No. GN304388, (the "Receiver Claim").  The Receiver Claim was brought against numerous defendants, including White and National Health.  The complaint alleged that by order dated March 6, 2002, the District Court of Travis County Texas placed American Benefit Plans, ("American Benefit"), into receivership and appointed Loiseau as its receiver.  The complaint also alleged that pursuant to the Final Judgment of the Texas Court, Loiseau was granted authority as the representative of American Benefit to preserve, protect and recover assets or property of American Benefit, and to bring claims or causes of action belonging to American Benefit and/or its policyholders, claimants and creditors.[10]

[9]Doc. 25-8, pp. 11, 13-14,16, ¶¶ 48, 57, 72, 76.

[10]Doc. 25-9, pp. 2, ¶ 3.

The complaint in the Receiver Claim further alleged that the defendants, including White and National Health, "participated, directly and/or indirectly, in the formation, operation, sale, administration and management of" American Benefit, and that numerous courts and agencies, including the United States Department of Labor, had determined that American Benefit was a MEWA.[11]

On August 8, 2003, December 30, 2003, and March 8, 2004, the Plaintiffs submitted demand letters to Continental requesting that Continental defend and indemnify the Plaintiffs against the Juhnke, Brown, and Receiver Claims, respectively, pursuant to the terms of the Policy.  Continental denied coverage for each claim on the grounds that the Juhnke and Brown claims did not involve any entities who were covered by the Policy, and that all three claims were excluded from coverage under both Exclusions 14 and 19.  The Plaintiffs litigated the claims and ultimately settled the Juhnke Claim for $58,000, the Brown Claim for $201,500, and the Receiver Claim for $512,826.80, inclusive of attorney's fees.

IV.   Procedural History

On December 15, 2006, the Plaintiffs filed a two-count Complaint against Continental in the Circuit Court of the Fifth Judicial Circuit, In and For Lake County, Florida.  (Doc. 2). The Complaint alleges that: (1) Continental breached its duty to defend when it refused to provide the Plaintiffs with a defense in the Juhnke, Brown, and Receiver Claims (Count I);

---

[11]Id. pp. 20-21, ¶¶ 167, 170.

and (2) Continental breached the Policy when it refused to indemnify the Plaintiffs for the full amount of each settlement, including attorney's fees.  (Count II).

On February 16, 2007, Continental removed the case to this Court on the basis of diversity jurisdiction.  (Doc. 1).  See 28 U.S.C. §§ 1332; 1441(b).  On February 26, 2007, Continental filed its Answer, and asserted three counterclaims.   (Doc. 5).  Each counterclaim seeks a declaratory judgment that the Policy does not provide coverage to the Plaintiffs for the Juhnke Claim (Count I), the Brown Claim (Count II), and/or the Receiver Claim (Count III).  Continental further requests that costs be taxed against the Plaintiffs.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party."  Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward

with "sufficient evidence of every element that he or she must prove." <u>Rollins v. Techsouth</u>, 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. <u>Celetex</u>, 477 U.S. at 324.

**<u>Discussion</u>**

Continental's duty to defend and indemnify the Plaintiffs for the three underlying claims rests entirely upon the meaning of the coverage and exclusionary provisions of the Policy and their legal effect.  Since the construction and effect of a written contract are matters of law to be determined by the Court, this matter, given the completeness of the record, is appropriate for summary judgment. <u>See</u> <u>Northland Cas. Co. v. HBE Corp.</u>, 160 F.Supp.2d 1348, 1357-58 (M.D. Fla. 2001) ("Summary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law.") (citing <u>Talat Enter., Inc. v. Aetna Life & Cas.</u>, 952 F.Supp. 773 (M.D. Fla. 1996)).

The Parties agree that Florida law governs the interpretation and construction of the Policy.  In Florida, the construction of alleged ambiguities in an insurance policy is a question of law for the Court to resolve. <u>State Farm Fire & Cas. Co. v. Metro. Dade County</u>, 639 So.2d 63, 65 (Fla. 3d Dist. Ct. App.1994) (citing <u>Jones v. Utica Mut. Ins. Co.</u>,

8

463 So.2d 1153, 1157 (Fla. 1985)).  "[P]olicy provisions which tend to limit liability must be construed liberally in favor of the insured against the insurer," however, "where the language of the policy is clear and unambiguous on its face, the policy must be given full effect." Id. (citations omitted).  "In the absence of ambiguity ... it is the function of the court to give full effect to the insurance contract as written." Id. (citing United States Fire Ins. Co. v. Morejon, 338 So.2d 223, 225 (Fla. 3d Dist. Ct. App. 1976)).   On the other hand, where a policy is ambiguous, a court will construe the policy in favor of coverage and against the insurer who drafted the policy. Northland Cas. Co., 160 F.Supp. 2d at 1358. When assessing an insurance dispute, the insured has the burden of proving that a claim against it is covered by the policy, and the insurer has the burden of proving an exclusion to coverage.  Id.  (citations and quotations omitted); Key Custom Homes, Inc. v. Mid-Continental Casualty Co., 450 F. Supp. 2d 1311 (M.D. Fla. 2006).

In order to interpret and apply the Policy's coverage and exclusionary provisions, the Court must also analyze the allegations set forth in the Juhnke, Brown, and Receiver Claims themselves.  The existence of a duty to defend is determined based solely on the allegations of the underlying complaint. Jones v. Florida Ins. Guar. Ass'n, 908 So. 2d 435 (Fla. 2005); Hartford Accident & Indem. Co. v. Beaver, 466 F.3d 1289 (11th Cir 2006). "A liability insurance carrier must defend the insured only when the initial pleadings fairly bring the case within the scope of coverage." State Farm Fire & Cas. Co. v. Tippett, 864 So.2d 31, 35 (Fla. 4th Dist. Ct. App. 2003); see also Pioneer Nat'l Title Ins. Co. v. Fourth Commerce Props. Corp., 487 So.2d 1051, 1054 (Fla. 1986).  However, if the pleadings

show the applicability of a policy exclusion, the insurer has no duty to defend.  Reliance Ins. Co. v. Royal Motorcar Corp., 534 So.2d 922, 923 (Fla. 4th Dist. Ct. App. 1988).[12]

With these basic legal principles in mind, the Court will now turn to the three underlying claims.

I.    The Juhnke and Brown Claims

Continental contends that it is entitled to summary judgment on the Juhnke and Brown Claims because they do not involve any defendants who are covered entities under the Policy.  Neither claim was brought against White or H. Wayne White and Associates, Inc.; they were brought against National Health, which is admittedly not covered under the plain terms of the Policy.  Indeed, in its response in opposition, the Plaintiffs agree that National Health is not an insured under the Policy and that coverage is not available for the Juhnke and Brown Claims.[13]  Therefore, the Court finds that there is no coverage under the Policy for the Juhnke and Brown Claims, and that summary judgment in Continental's favor is appropriate as to Counts I and II of its counterclaim.

II.    The Receiver Claim

---

[12]The Court will focus primarily on the duty to defend because, in Florida, an insurer's duty to defend is distinct from and broader than its duty to indemnify.  U.S. Fire Ins. Co. v. Hayden Bonded Storage Co., 930 So.2d 686, 691 (Fla. 4th Dist. Ct. App. 2006).  If there is no duty to defend, there is no duty to indemnify.  Fun Spree Vacations, Inc. v. Orion Insurance Co., 659 So.2d 419, 422 (Fla. 3d Dist. Ct. App. 1995).

[13]Doc. 30, p. 1.

The only remaining issue to resolve is whether White is covered by the Policy for the Receiver Claim.  Continental argues that there is no coverage pursuant to two Policy exclusions.  First, Continental points to Exclusion 14, which excludes coverage for any claims "based upon, directly or indirectly arising out of, or in any way involving the insolvency, receivership, . . . or inability to pay of a benefit plan. . . ."  The underlying complaint in the Receiver Claim alleges that: (1) the Plaintiff, Loiseau, was appointed Special Deputy Receiver of American Benefit; (2) Loiseau brought the Receiver Claim in his capacity as receiver of American Benefit, in order "to preserve, protect, and recover any assets or property" of the plan; (3) the suit was brought on behalf of American Benefit and its policyholders, claimants, creditors, and assigns; and (4) Loiseau brought the suit pursuant to the authority granted by the Texas Court's Final Judgment, which placed American Benefit into permanent receivership.

These allegations clearly show that the Receiver Claim was "based upon, directly or indirectly arising out of, or in any way involving the receivership of a benefit plan," and, therefore, the Claim falls squarely within the parameters of Exclusion 14.  White, however, argues that summary judgment is inappropriate because Continental is focusing on the wrong claim.  According to White, the "claim" referred to in Exclusion 14 is the underlying claim by the insured person seeking health benefits from the defunct insurance provider, not the claim made by White to Continental.  And, because the record evidence does not establish whether the health benefits claims were made at a time when American Benefits

was in receivership and/or insolvent, material issues of fact exist precluding summary judgment.

White's argument, while clever, is not persuasive.  The Definitions section of the Policy defines a "claim" as "a civil adjudicatory or arbitration proceeding for monetary damages, against an **Insured** for a **Wrongful Act**, . . . ."[14]  This definition is not ambiguous - it clearly means the claim made against the insured - White - for which the insured is seeking coverage under the Policy.  It does not mean the underlying claims for health benefits originally made against a third party health insurance provider.[15]  In order to accept the Plaintiffs' analysis, the Court would not only have to ignore the plain and unambiguous terms of the Policy, but it would also have to give an unreasonable interpretation to both the definition of "claim" and the terms of the exclusion.  This the Court cannot do.  See Siegle v. Progressive Consumers Ins. Co., 819 So.2d 732, 736 (Fla. 2002) ("terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent

---

[14]Doc. 25-4, p. 4 (emphasis in original).  This same definition of Claim is repeated on the very first page of the Policy, which states that "THIS IS A CLAIMS MADE AND REPORTED POLICY AND, SUBJECT TO ITS PROVISIONS, APPLIES ONLY TO ANY CLAIM (AS DEFINED IN THE POLICY) FIRST MADE AGAINST AN INSURED . . . ."  Id. at p. 2.  The "Insuring Agreement" also reiterates that Continental will pay for losses incurred by the insured for claims made against the insured, based on wrongful acts "by the Insured."  Id. at p. 15.  These provisions further demonstrate that the only reasonable interpretation of the term "claim" is a claim made by the insured against Continental for any wrongful acts made by the insured.  It does not involve the underlying claims against the health insurance provider.

[15]Notably, White has not submitted any legal support for its strained interpretation of Exclusion 14, nor has White presented any evidence to even suggest that at any point in time American Benefits could have been considered an insured under the Policy.

of the parties - not a strained, forced, or unrealistic construction."). Because the Court finds that Exclusion 14 applies to the Receiver Claim, summary judgment is due to be granted in Continental's favor as to Count III of its counterclaim.

Even if White were able to persuade the Court that there were issues of fact, the Court concludes that coverage is also not available by virtue of Exclusion 19, which excludes claims "based upon, directly or indirectly arising out of, or in any way involving the actual or alleged sale,. . . of a Multiple Employer Welfare Arrangement . . . ." The allegations of the Receiver Claim specifically reference the Texas Court's March 6, 2002 Order, in which that court found that American Benefit was a MEWA, as well as several other decisions by other jurisdictions that have found that American Benefit was a MEWA. The Receiver Claim's complaint further alleged that "it has already been determined by state and federal courts, state regulatory agencies and the United States Department of Labor that the health insurance programs and the entities at issue in this case do not fall under the provisions of 29 U.S.C. § 1001 et seq., the Employee Retirement Income Security Act . . . ."[16] Thus, based on the plain allegations of the Receiver Claim, it is clear that the Claim involved the sale of a MEWA, and therefore falls within Exclusion 19.

In his response, White contends that Exclusion 19 does not apply because there is no evidence that at the time White sold coverage under American Benefit, White knew that it was a MEWA.  White's argument, which is unsupported by any legal authority, fails

---

[16]Doc. 25-9, p. 20, ¶ 167.

because there is no requirement in Exclusion 19 that an insured <u>knowingly</u> sell MEWA coverage.  The Court is not authorized to interpret policy provisions to include additional terms.  <u>See</u> <u>Taurus Holdings, Inc. v. United States Fidelity & Guar. Co.</u>, 913 So. 2d 528, 532 (Fla. 2005) ("courts may not 'rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.'") (citations omitted).[17] Continental is entitled to summary judgment on its counterclaim.

## Conclusion

Accordingly, upon due consideration, Defendant Continental Casualty Company's Motion for Summary Judgment, (Doc.  25), is GRANTED.  The Clerk is directed to enter judgment in favor of Defendant Continental Casualty Company and against Plaintiffs H. Wayne White, H.  Wayne White And Associates, Inc., and National Health Plans Plus, Inc. on all three Counterclaims, (Doc. 5), decreeing and declaring that the Company Sponsored Life Insurance Agent And Securities Broker/Dealer Professional Liability Policy, Number 267868196 (effective May 1, 2003 - May 1, 2004), does not provide any coverage to the Plaintiffs, and that the Defendant does not have any duty to defend or indemnify the

---

[17]White's last argument against summary judgment is based on his contention that the phrase "arising out of," which is contained in both exclusions, is an undefined term of art that is susceptible to multiple interpretations.  This argument fails both because it ignores the remainder of the clear and unambiguous language of both exclusions, which can only be reasonably interpreted to exclude coverage, and because the Florida Supreme Court has held that the phrase "arising out of" is not ambiguous.  Taurus Holdings, 913 So. 2d at 540 ("The term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.' . . . .  "[T]his requires more than a mere coincidence between the conduct . . . and the injury. . . .  It requires 'some causal connection, or relationship.") (citations omitted).

Plaintiffs for the allegations, claims, or damages made in connection with the following three claims: (1) Carolyn Juhnke, Plaintiff vs. Dale Strickland, TRG Marketing LLC, The Nationwide Companies, Inc., and National Health Plans Plus, Inc., and TDI Managed Care Services, Inc. d/b/a Eckerd Health Services, Defendants, Case No. cv-02-001396-4; (2) Lloyd Dean Brown and Connie Brown, Plaintiffs vs. Helen Markovich, Team National, Inc., National Health Plans Plus, Inc., Jerry Wayne Morgan, Kenny Joe Harris, Carmelo Zanfei, individually and d/b/a TRG Marketing, LLC, and William Pal Crouse, Jr., individually and d/b/a TRG Marketing LLC, Defendants, Case No. CV-2003-0099; and (3) Robert Loiseau, Special Deputy Receiver, of American Benefit Plans, et al., Plaintiff vs. Robert David Neal, et al., Defendants, Case No. GN304388.  The judgment should also reflect that all of the Plaintiffs' claims alleged in their Complaint, (Doc. 2), are dismissed with prejudice, with costs to be taxed in accordance with applicable law.

The Clerk is further directed to terminate any pending motions, and close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 14th day of May, 2008.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record